# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LILIAY PAGAN VELAZQUEZ,** | : | Civil No. 3:17-CV-317 |
| **Plaintiff,** | : | |
| | : | (Judge Munley) |
| v. | : | (Magistrate Judge Carlson) |
| **NANCY A. BERRYHILL,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

In the instant Social Security Appeal, we are asked to consider whether an Administrative Law Judge (ALJ) sufficiently examined the constellation of mental, emotional and physical impairments confronting the Plaintiff, Liliay Pagan Velazquez (Pagan) before denying her application for social security benefits. Specifically, we must determine whether the ALJ's decision denying Pagan benefits is supported by substantial evidence when that evidence reveals that Pagan was diagnosed with a potentially profound mental health condition, schizoaffective disorder, yet the decision denying benefits never mentions this serious mental health condition as either severe or even medically determinable.

Upon consideration, we find that the ALJ did not sufficiently consider

1

Pagan's diagnosis for schizoaffective disorder at step two of the five-step sequential analysis that must be undertaken in these cases, and the absence of any discussion regarding this potentially grave medical condition renders the remainder of the ALJ's decision infirm and incapable of adequate review by this Court. Accordingly, for the reasons discussed below, we recommend this case be remanded for further consideration by the Commissioner.

## II. **BACKGROUND**

Pagan filed for disability benefits under Titles II and XVI of the Social Security Act in October 2013 (Tr. 166-73.) In her claim, Pagan alleged that she suffered from a variety of psychological and physical impairments. (Tr. at 224.) Pagan's physical complaints included pain, severe acid reflux, thyroid complications, and ulcers. (Doc. 10 at 194, 224.) Additionally, Pagan alleged that she suffered from severe depression, schizophrenia, bipolar disorder, anxiety, agoraphobia, panic attacks, claustrophobia, and daily hallucinations. (Tr. at 188, 194, 199, 209, 217, 219, 224.) Thus, among the constellation of reported mental health conditions besetting Pagan was a schizoaffective disorder. Schizoaffective disorders are, by definition, grave mental health conditions since a "[s]chizoaffective disorder is a mental disorder in which a person experiences a combination of schizophrenia symptoms, such as hallucinations or delusions, and mood disorder symptoms, such as depression or mania." Doc. 13, p. 6, n.1.)

2

In this case a significant body of medical evidence supported Pagan's claim that she suffered from this particular, and profound, form of mental illness. Indeed, Pagan had been diagnosed with schizoaffective disorder by Maurice Ralph Piccioto, M.D., her treating, board-certified psychiatrist at TrueNorth Wellness Services. (Tr. 371-392.) This diagnosis was, in turn, corroborated by Pagan's reported symptoms, which bore all of the hallmarks of schizoaffective disorder. Thus, Pagan reported being in a sad mood all the time, frequently crying, a loss of interest in things that give her pleasure, not sleeping or eating well, having panic attacks, hearing voices telling her things and criticizing her, and occasionally seeing things as well. (Tr. 382.)

Having diagnosed Pagan as suffering from this schizoaffective disorder, in a July 21, 2014 mental status examination of Ms. Pagan, Dr. Piccioto reported that she suffered from depressed mood, constricted affect, auditory and visual hallucinations, and questionable reality testing. Notably, Dr. Piccioto found that Pagan's reported symptom "seem[ed] credible" (Tr. 383), and rated her Global Assessment of Functioning score ("GAF") as 45. (R. 379, 383, 384, 387, 391.) These were significant clinical findings which were tied by Dr. Piccioto to Pagan's diagnosed schizoaffective disorder. "A GAF score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one

3

hundred. See Diagnostic and Statistical Manual of Mental Disorders, 32–34(4th ed. text rev.2000) (hereinafter 'DSM–IV'). A score is placed in a particular decile if either symptom severity or the level of functioning falls with that range. Id." Markoch v. Colvin, No. 3:14-CV-00780, 2015 WL 2374260, at *10 (M.D. Pa. May 18, 2015). Under the GAF score system:

> GAF scores in the 51–60 range indicate moderate impairment in social or occupational functioning." Cherry v. Barnhart, 29 Fed.Appx. 898, 900 (3d Cir. 2002). DaVinci v. Astrue, 1:11-CV-1470, 2012 WL 6137324 (M.D. Pa. Sept. 21, 2012) report and recommendation adopted, Davinci v. Astrue, 1:11-CV-1470, 2012 WL 6136846 (M.D. Pa. Dec. 11, 2012). "A GAF score of 41–50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).' DSM–IV at 34. A score of 50 is on the borderline between serious and moderate symptoms." Colon v. Barnhart, 424 F. Supp. 2d 805, 809 (E.D. Pa. 2006). See Shufelt v. Colvin, No. 1:15-CV-1026, 2016 WL 8613936, at *2 (M.D. Pa. Sept. 15, 2016), report and recommendation adopted sub nom. Shulfelt v. Colvin, No. 1:15-CV-1026, 2017 WL 1162767 (M.D. Pa. Mar. 29, 2017).

Jones v. Colvin, No. 1:16-CV-1535, 2017 WL 4277289, at *2 (M.D. Pa. Sept. 25, 2017), report and recommendation adopted sub nom. Jones v. Berryhill, No. 1:16-CV-1535, 2017 WL 4314572 (M.D. Pa. Sept. 27, 2017).

Dr. Piccioto's assessment and diagnosis that Pagan suffered from a schizoaffective disorder that resulted in serious symptoms gained further credence from the fact that Pagan's therapist confirmed six months later, January 29, 2015, that Pagan still "ha[d] auditory hallucinations that blame her for every bad thing that happens in life." (Tr. 377.) Pagan also testified to the on-going severity of this

4

schizoaffective disorder at the hearing conducted by the ALJ on May 12, 2015, where she stated that: "I hear voices talking to me," telling her "that I'm not good for anything, what kind of example I'm setting for my daughter," and that she heard the voices "almost every day." (Tr. 68-69.)

Despite this evidence, diagnosis, and testimony by Pagan, Pagan's application for SSI benefits was denied by the ALJ on July 27, 2015. (Tr. at 28-36.) In the decision denying this application for benefits, the ALJ first found that Pagan met the insured requirements of the Act through June 2015. (Tr. 30.) At Step 2 of the five-step sequential analysis process that applies to Social Security disability claims, the ALJ concluded that Pagan had the following severe impairments: depression, anxiety and chronic back pain. (Tr. 30.) The ALJ's ruling made no mention of Pagan's schizoaffective disorder. In fact, despite this diagnosis and the evidence that Pagan experienced nearly daily auditory and visual hallucinations, the ALJ did not find this profound mental health diagnosis to be either severe or even medically determinable. Indeed, the ALJ's decision made no mention of this mental health condition and diagnosis whatsoever. (Id.) At Steps 3 and 4 of this sequential analysis, the ALJ concluded that none of Pagan's impairments met a listing which would define her as *per se* disabled, (Tr. 31), but determined that she could not return to her past relevant work. (Tr. 35.) The ALJ then concluded that Pagan retained the residual functional capacity to perform a

range of light work. (Tr. 32-37.) On the basis of these findings, findings which made no mention of Pagan's schizoaffective disorder, the ALJ determined Pagan was not disabled under §§ 216(i), 223(d), and 1614(a) (3) (A) of the Social Security Act.

This appeal followed. (Doc. 1.) This matter is fully briefed and is, therefore, ripe for resolution. Upon consideration of the parties' competing positions, we find that the complete failure to assess whether Pagan's schizoaffective disorder was medically determinable, severe, or otherwise disabling, or to even mention this condition in the decision denying Pagan benefits, compels a remand of this case for further consideration by the Commissioner.

## III. DISCUSSION

### A. Standard of Review-The Roles of the ALJ and this Court

Resolution of the instant social security appeal involves consideration of the respective roles of two adjudicators—the ALJ and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment; (4) the claimant is able to do his or her past relevant work; and (5) the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Notably, the Third Circuit Court of Appeals has recognized that the burden placed on an applicant at step two of this process is not exacting, and that "[a]ny doubt as to

whether this showing has been made is to be resolved in favor of the applicant." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856, at *3).

Once the ALJ makes a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3)*;* Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v.

Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that the claimant is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 U.S. Dist. LEXIS 31292 at *1 (M.D. Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.

Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). The ALJ must resolve conflicts of evidence must indicate which evidence was accepted and rejected and must also indicate the reasons for rejecting evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate . . . which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Commissioner of SSA, 181 F.3d 429, 433 (3d Cir. 1999).

This principle applies with particular force to ALJ decisions which deny benefit applications without even addressing a claimant's schizoaffective disorder. If an ALJ fails to address a medical condition like a schizoaffective disorder raised by the claimant that has some support in the record, and offers no explanation for failing to address that condition, remand is appropriate because the reviewing court cannot determine whether the ALJ's decision is supported by substantial evidence. See, e.g., Jerro v. Colvin, No. CV 15-3775-DFM, 2016 U.S. Dist. LEXIS 86855, at *9 (C.D. Cal. July 5, 2016) (remanding SSI appeal because "the ALJ failed to explicitly address or provide specific and legitimate reasons for rejecting the treating physicians' diagnosis about Plaintiff's schizoaffective disorder."); Childs v. Colvin, No. 1:14-CV-00462 (MAT), 2016 U.S. Dist. LEXIS 37840, at *9-*10 (W.D.N.Y. Mar. 23, 2016) ("The ALJ's failure to consider plaintiff's

schizoaffective disorder at both steps two and three of the sequential evaluation process constituted reversible error because a full consideration of plaintiff's disorder could have affected the outcome of her application."); Johnson v. Colvin, No. 3:13-cv-301, 2014 U.S. Dist. LEXIS 162255, at *24-*25 (S.D. Ohio Nov. 19, 2014) (remanding SSI claim because the ALJ failed to address plaintiff's diagnosis of schizoaffective disorder, which occurred after plaintiff filed her initial SSI claim, and noting that "[r]egardless of whether [the diagnosis] was a severe impairment or not, the ALJ's failure to consider all of Plaintiff's mental impairments when assessing Plaintiff's residual functional capacity constituted error."); Sykes v. Colvin, No. CV 12-1171, 2013 U.S. Dist. LEXIS 122243, at *4-*5 (C.D. Cal. Aug. 26, 2013) (remanding SSI claim because ALJ did not consider medical records containing a diagnosis of schizoaffective disorder, which plaintiff filed after an administrative hearing); Nosse v. Astrue, No.: 08-cv-1173, 2009 U.S. Dist. LEXIS 84944, at *45-45 (W.D. Pa. Sept. 17, 2009) ("Until the ALJ explains why plaintiff's mental conditions are not severe . . . and provides reasons for rejecting [doctor's] diagnoses and opinions, the court is unable to determine whether the ALJ's RFC determination is supported by substantial evidence."). When analyzing mental illnesses as the basis for disability, ALJs must also consider the episodic nature of the disability alleged because the existence of "symptom-free intervals" of mental illness does not necessarily negate a finding of

disability. Mace v. Commissioner, 605 F. App'x 837, 843 (11th Cir. 2015) (quoting Singletary v. Bowen, 798 F.2d 818, 821 (5th Cir. 1986) ("While the mere existence of symptom-free periods may negate a finding of disability when a physical impairment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of the claim.")).

### B. This Case Should be Remanded for Further Assessment of Pagan's Schizoaffective Disorder

In this case the ALJ determined at Step 2 of the 5-step sequential analysis that applies to Social Security cases that Pagan suffered from severe depression, anxiety, and chronic back pain. (Tr. 30.) However, notably absent from this decision was any analysis of Pagan's schizoaffective disorder, a disorder supported by a longstanding diagnosis, and ample clinical evidence as well as testimony by Pagan herself at the administrative hearing. Thus, the ALJ's decision did not identify this condition as medically determinable. Nor did the ALJ address whether this schizoaffective disorder, which caused Pagan to experience hallucinations on what she described as a daily basis, was severe. In fact, the ALJ made no mention of this condition whatsoever.

In our view more is needed here.

We believe that the ALJ erred in failing to identify Pagan's well-documented schizoaffective disorder as either medically determinable or severe in

Step 2 of the five-step analytical paradigm that governs this social security appeal. It is well-settled that this step two medically determinable-severity inquiry is a *"de minimus* screening device to dispose of groundless claims." McCrea v. Comm. of Soc. Sec.*,* 370 F.3d 357, 360 (3d Cir.2004); Newell v. Comm. of Soc. Sec.*,* 347 F.3d 541, 546 (3d Cir.2003). Accordingly, "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant," id.; the claimant's burden at step two is "not an exacting one," id.; and this step should be "rarely utilized" to deny benefits. Id*.* at 361. Further, "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." Id. at 360. As part of this "close scrutiny" it is clear that we cannot sustain a step two benefit denial decision, which rests upon an ALJ's refusal to attach any significant weight to a physician's opinion. See Magwood v. Comm'r of Soc. Sec., 417 F. App'x 130, 132 (3d Cir. 2008)(citing McCrea v. Comm. of Soc. Sec.*,* 370 F.3d 357, 360 (3d Cir.2004)). Similarly, at this initial stage in the disability benefit review process, an ALJ errs if the ALJ makes an adverse step two determination, but fails to address some material evidence in the record which supports that disability claim. See Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 470 (3d Cir. 2007).

Here, there was significant, material evidence which indicated both that Pagan suffered from a medically determinable condition, a schizoaffective

13

disorder, and that this condition was severe since it caused Pagan to suffer from nearly daily hallucinations. Given the *"de minimus"* nature of the claimant's burden at Step 2, and acknowledging that "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant," and the claimant's burden at step two is "not an exacting one," McCrea v. Comm. of Soc. Sec*.,* 370 F.3d 357, 360 (3d Cir.2004), we believe that the ALJ erred in not considering this mental condition to be either determinable or severe at Step 2, or even alluding to this diagnosis in the body of the ALJ's decision.

This error then appears to have affected the ALJ's subsequent analysis of this claim. Having prematurely discounted this mental impairment at Step 2, the ALJ then failed to meaningfully consider the cumulative effect of this mental limitation and the plaintiff's other impairments at step 5 of the evaluation process when formulating Pagan's residual functional capacity. Moreover, this failure to further address this diagnosed condition in formulating Pagan's residual functional capacity was unexplained by the ALJ's decision. In fact, that decision neglected to make any mention of this condition, or address in any way its potential relevance to this disability determination. "In the absence of such an [explanation] the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)  Therefore, a remand to reconsider, and expressly address, the

cumulative effects of this emotional and mental impairment upon Pagan's residual functional capacity is also warranted.

In short, it is axiomatic that the ALJ may discount some evidence, but in doing so, must give some indication of the evidence the ALJ rejects and the reasons for discounting that evidence. See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) (stating that an ALJ must provide "some individuation of the evidence which was rejected" because "[i]n the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."). Here, the ALJ's discussion of Pagan's mental impairments is limited to Pagan's severe depression and anxiety, and does not address in any fashion her diagnosed schizoaffective disorder, an impairment which caused Pagan to suffer from hallucinations on a near daily basis. Consequently, this case should be remanded so that the ALJ can make explicit findings regarding the possible impact of Pagan's schizoaffective disorder diagnosis on her disability claim.

Yet, while case law calls for a remand and further proceedings by the ALJ in this case assessing this claim in light of this evidence nothing in our opinion should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence on remand by an ALJ. Therefore,

nothing in this Report and Recommendation should be deemed as expressing an opinion on what the ultimate outcome of any reassessment of this evidence should be. Rather, that task should remain the duty and province of the ALJ on remand.

## IV. <u>RECOMMENDATION</u>

Because the ALJ did not address Pagan's schizoaffective disorder diagnosis, this Court cannot analyze whether the ALJ's rejection of Pagan's claim is supported by substantial evidence at this time. Accordingly, it is **RECOMMENDED** that the Plaintiff's appeal of the ALJ's ruling be **GRANTED** and that this case be **REMANDED** for further consideration of the Plaintiff's application.

> The parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2d day of November, 2017.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge